# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETERANS RIDESHARE, INC.; CAR CHAMPS FINANCE, LLC; YOUR LEASING SOLUTION, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NAVISTAR INTERNATIONAL CORP.; NAVISTAR, INC.; DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 20-cv-01304-BAS-LL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>**(ECF No. 4)** |

Defendants Navistar International Corporation and Navistar, Inc. ("Defendants" or "Navistar") move to dismiss Plaintiffs' Complaint for failing to state claims upon which relief can be granted. (Mot. to Dismiss ("Motion"), ECF No. 4.) Plaintiffs oppose, and Defendants reply. (ECF Nos. 16, 17.) The Court finds the Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed a Complaint in San Diego Superior Court on May 26, 2020. (Compl., Ex. A to Notice of Removal, ECF No. 1-2.) Defendants removed the action to this Court

on July 10, 2020 and subsequently moved to dismiss the Complaint.  (ECF Nos. 1, 4.)  On August 21, 2020, the United States Judicial Panel on Multidistrict Litigation ("MDL") conditionally transferred the action to the Northern District of Illinois for coordinated or consolidated pretrial proceedings.  (ECF No. 5.)  The court approved a class-wide settlement in January 2020 that resolved most of the MDL disputes.  As to the cases that opted out of the settlement, including the instant action, the Northern District of Illinois suggested remand to the Judicial Panel on MDL because they involved case- and fact-specific discovery and motion practice.  (ECF No. 13.)  The Panel thereafter ordered the action remanded. (ECF No. 14.)  This Court then reopened the case and ordered a briefing schedule on Defendants' Motion to Dismiss.  (ECF No. 15.)

## B.    Allegations in the Complaint

Plaintiffs Veterans Rideshare, Inc., Car Champs Finance LLC, and Your Leasing Solution LLC (collectively, "Plaintiffs") leased 141 MaxxForce Engine Vehicles ("Subject Vehicles") from Sutton Leasing, Inc., a Michigan corporation, which purchased them from Navistar.  (Compl. ¶ 37.)  Plaintiff Veterans Rideshare, Inc. "is a trucking company that offers specialized custom logistics" while the other two Plaintiffs, Car Champs Finance LLC and Your Leasing Solution LLC, "are in the business of leasing vehicles . . . to individual truckers and/or their companies."  (*Id.* ¶¶ 39–40.)

Plaintiffs' Complaint arises from the allegedly defectively designed emissions system in the engines of the Subject Vehicles, which were manufactured, marketed, distributed, and sold by Navistar.  (Compl. ¶ 36.)  Plaintiffs allege that Defendants elected to design the engines of the Subject Vehicles using only an older technology called "Exhaust Gas Recirculation" ("EGR") to comply with the Environmental Protection Agency's ("EPA") emissions standards.  (*Id.*)  EGR technology cools and then recirculates part of an engine's exhaust gas back into the engine cylinders, which lowers the in-cylinder temperatures during combustion and reduces the amount of nitrogen oxide produced.  (*Id.*

¶ 42.)[1]  Plaintiffs claim that Navistar made multiple representations in marketing materials that its engines were reliable, would ensure optimal long-term performance, and would be both fuel efficient and low-cost.  (*Id.* ¶¶ 67–70.)

However, Plaintiffs allege, the EGR technology caused the Subject Vehicles' engines to create more "particulate matter," or soot, and required the cooling system to reject more heat into the atmosphere ("heat rejection"), which overloaded the emissions components and caused them to fail.  (Compl. ¶ 44.)  The failures included clogged and cracked EGR coolers and valves, leading to "engines shutting down or losing power, EGR cooler or valve failures, turbocharger failures, diesel particulate filter clogging, and other issues that led to excessive downtime of Navistar Trucks."  (*Id.* ¶¶ 46–47.)  They also claim that the sudden breakdowns required drivers to "attempt emergency maneuvers" and can cause coolant and exhaust fumes to leak into the passenger compartment of the trucks, posing a risk of poisoning the drivers.  (*Id.* ¶ 48.)

Plaintiffs allege that Navistar knew about the defect as early as 2004, when they received complaints and ultimately a lawsuit from Ford regarding defects in EGR-only diesel engines used in its vehicles.  (Compl. ¶¶ 57–58.)   In addition, Plaintiffs claim a securities lawsuit alleged that employees informed management about the limitations of EGR-only engines, but that the information was ignored and suppressed by management.  (*Id.* ¶ 64.)  Ultimately, Plaintiffs contend, Navistar could not design the engines to comply with EPA emissions standards and were required to pay non-conformance penalties ("NCPs") to the EPA.  (*Id.* ¶ 71.)

Plaintiffs bring causes of action for negligence, negligent misrepresentation, fraudulent concealment, fraud in the inducement, and a violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200).

---

[1] According to Plaintiffs, all manufacturers selling commercial trucks in the U.S.,  except for Navistar, recognized the issues caused by using EGR-only technology and chose to add a different emissions technology—identified as "SCR"—to meet the EPA's standards.  (Compl. ¶ 41.)  SCR technology injects urea into engine exhaust to reduce nitrogen oxide and includes a "diesel oxidation catalyst and a diesel particulate filter" to do so without generating more soot.  (*Id.* ¶¶ 41, 43 n.2.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B.   Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake[,]" while allowing

"[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally. "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted). These circumstances include the "the who, what, when, where, and how of the misconduct charged." *Id.*; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (holding that "claims sounding in fraud must allege an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"). Plaintiffs must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). However, Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary matter. All that is necessary is 'identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *6 (C.D. Cal. Oct. 20, 2014) (citing *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973)).

The Rule 9(b) requirement that allegations of fraud be pled with particularity applies to causes of action arising under both state and federal law. *See Vess*, 317 F.3d at 1103. However, "in a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1105.

## III.   ANALYSIS

In their Motion, Defendants argue that because Plaintiffs have alleged claims sounding in tort but seek to recover only economic damages, all claims are barred by California's economic loss rule. Additionally, regarding the fraud claims (negligent misrepresentation, fraudulent concealment, and fraud in the inducement) and the related

UCL claim, Defendants contend that the alleged misrepresentations are puffery and therefore not actionable as fraud, and that the claims themselves fail to satisfy the pleading requirements of Rule 9(b).  Lastly, Defendants seek to dismiss the UCL claim and the request for attorneys' fees as deficient as a matter of law.

The Court finds that while some of the allegedly fraudulent statements in the Complaint are non-actionable as puffery, Defendants' arguments in support of dismissal of Plaintiffs' negligence and fraud claims largely lack merit and do not warrant dismissal. In addition, the Court agrees Plaintiffs' UCL claim inadequately pleads standing for injunctive relief, but finds Defendants prematurely seek dismissal of Plaintiffs' claim for attorneys' fees.

### A.    Economic Loss Rule

Defendants move to dismiss all claims on the basis that Plaintiffs cannot seek only economic damages for tort claims pursuant to California's economic loss rule.  (Mem. of P. & A. in supp. of Mot. ("Mem. of P. & A.") at 2, ECF No. 4-1.)  Plaintiffs respond that the economic loss rule does not apply because the parties are not in privity, and therefore the law allows for recovery in tort where Navistar's lack of ordinary care resulted in harm to Plaintiffs' economic interests.  (Opp'n at 2–6, ECF No. 16.)

Under California's economic loss rule, plaintiffs generally cannot recover for solely economic loss in actions that sound in tort.  *Seely v. White Motor Co.*, 63 Cal. 2d 9, 45 (1965); *see also Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations."), *superseded by statute on other grounds*.  The rule is intended to "prevent[] the law of contract and the law of tort from dissolving into one another."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see also Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) ("'[T]he doctrine is intended to maintain traditional limits on manufacturers' liability provided by the law of warranty, except in cases of physical injury to persons or property.'").

For the reasons explained below, the Court finds that the absence of privity between Plaintiffs and Navistar renders the economic loss rule inapplicable to the instant claims. Furthermore, Plaintiffs' negligence claim independently survives dismissal because a "special relationship" exists between the parties to establish a duty owed by Navistar to Plaintiffs.

### 1.    The absence of privity

Navistar sold the Subject Vehicles to Sutton Leasing, who in turn leased them to all Plaintiffs to this action.  Therefore, there is no privity between Navistar and Plaintiffs. Defendants do not dispute this.  Nonetheless, they argue that the economic loss rule and warranty laws under the California Commercial Code foreclose Plaintiffs' tort claims.  As explained below, Defendants' arguments lack merit because privity is a necessary prerequisite to the economic loss rule and the specific warranty provision at issue.

### a)    *Robinson-Helicopter* does not apply without privity

In part, Defendants argue that Plaintiffs' claims should be dismissed because they do not fall within the narrow exception to the economic loss rule laid out one of California's seminal case regarding the economic loss rule, *Robinson Helicopter*.  (Mem. of P. & A. at 6–11.)  However, unlike *Robinson Helicopter*, the parties here did not enter into a written or oral agreement and are not in privity.  Defendants cite to no case law to support the application of *Robinson Helicopter* or the economic loss rule generally where the parties are not in privity.

In fact, existing case law suggests the opposite.  The absence of privity between parties to a lawsuit has been found to preclude the application of the economic loss rule. *See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV 14-3466 MMM (JPRx), 2015 WL 12746208, at *11 (C.D. Cal. Oct. 30, 2015) ("If there is no contractual relationship between a plaintiff and a defendant, then defendant cannot invoke the economic loss rule."); *see also Affiliated FM Ins. Co. v. LTK Consulting Servs. Inc.* ("*Affiliated FM*"), 556 F.3d 920, 921 (9th Cir. 2009) (noting that it was "unclear how the contract-tort distinction that is central to the economic loss rule applies" under Washington law where

the plaintiff contracted with a third party, "which in turn contracted independently with [the defendant]").  In so finding, courts have held that when the harm to a plaintiff is foreseeable, "a manufacturer has a duty not to impair the commercial operations of the purchaser with a faulty product." *Frank M. Booth, Inc. v. Reynolds Metals Co.* ("*Booth*"), 754 F. Supp. 1441, 1449 (E.D. Cal. 1991) (citing cases).  This is consistent with the rationale underpinning the economic loss rule: the parties to a contract should be able to allocate risk through the contract itself.  *See, e.g.*, *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 481 (9th Cir. 1995) (barring tort claims under Arizona law because plaintiff sought "to recover purely 'benefit of the bargain' " economic losses based on "foreseeable risks [that] could have been—and indeed were—allocated by the parties in their contractual agreement"); *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 824297, at *5 (N.D. Cal. Feb. 28, 2014) ("These two sophisticated parties reached a bargain allocating the risks of doing business, and the provisions of their agreement displace tort duties with regard to Defendant's obligations under the contract."); *see also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986) (noting that contract law has a "built-in limitation on liability" deriving from the parties' agreement and foreseeability requirements).  Where no contract exists, there is no opportunity to do so. *See Affiliated FM*, 556 F.3d at 921; *Booth*, 754 F. Supp. at 1449 ("These cases, permitting a negligence claim exclusively for economic losses, arise when there is no privity of contract between the parties and therefore no remedy under the commercial code or contract.").

Considering this body of case law and noting that Defendants have not provided any authority to the contrary, the Court agrees with Plaintiffs' assertion that in the absence of any contractual agreement between the parties, "their claims do not arise out of any consensual agreement that would limit their tort rights."  (Opp'n at 3.)  Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiffs' claims on this basis.  *See Takano v. Procter & Gamble Co.*, No. 2:17-CV-00385-TLN-AC, 2018 WL 5304817, at *11 (E.D. Cal. Oct. 24, 2018) (denying motion to dismiss tort claims "[b]ecause Defendant cannot

point to any case law where the economic loss rule bars recovery in non-contractual tort actions").

> b) Implied Warranty of Merchantability requires privity

Defendants also contend that Plaintiffs' claims "are standard warranty/contract expectation-type losses" regarding "the quality and performance of a good," and are therefore governed by the provisions in California's Commercial Code concerning the implied warranty of merchantability in lease agreements. (Mem. of P. & A. at 10 (citing Cal. Comm. Code §§ 10212–14).)

In other states, the economic loss rule has been extended to tort claims for misrepresentation where "the misrepresentation only goes to the quality or quantity of the goods promised in the contract[.]" *Giles*, 494 F.3d at 876–77 (citing cases). In these decisions, "[w]here there are well-developed contractual remedies, such as the remedies that the Uniform Commercial Code (in force in all U.S. states) provides for breach of warranty of the quality, fitness, or specifications of goods, there is no need to provide tort remedies for misrepresentation." *Id.* at 877 (quoting *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865–66 (7th Cir. 1999)).

Even assuming this principle applies here, California's implied warranty of merchantability generally requires that plaintiffs "stand in vertical contractual privity with the defendant." *Hastings v. Ford Motor Co.*, 495 F. Supp. 3d 919, 925 (S.D. Cal. 2020) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)). "The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *All W. Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 724–25 (1998); *see also E. River S.S. Corp.*, 476 U.S. at 874 (noting that warranty law has a "built-in limitation[s] on liability" deriving from foreseeability and privity, "which is still generally enforced for such claims in a commercial setting"). Thus, plaintiffs who are not in privity with a manufacturer of a defective product are typically not able to recover for a breach of implied warranty. *See, e.g., Park-Kim v. Daikin Indus.,*

*Ltd*, No. 2:15-CV-09523-CAS (KKx), 2016 WL 6744764, at *8 (C.D. Cal. Nov. 14, 2016) (citing *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1333 n.11 (2014)) (finding plaintiffs not entitled to sue defendants under California's UCC for breach of implied warranty for defective HVAC units because plaintiffs did not purchase their units from the HVAC manufacturer), *aff'd sub nom. Park-Kim v. Daikin Applied Americas, Inc.*, 747 F. App'x 639 (9th Cir. 2019).[2]

Thus, the Court finds that even if a remedy under the implied warranty of merchantability would preclude tort claims for misrepresentation in cases involving the quality of contracted goods, the parties here lack the requisite privity for it to apply. Therefore, the Court also denies Defendants' Motion to Dismiss Plaintiffs' claims on this ground.

### 2.  Existence of a Special Relationship

In their Opposition, Plaintiffs invoke the existence of a "special relationship" between the parties as an exception to the economic loss rule. (Opp'n at 11.)  In response, Defendants cursorily assert that no facts in the Complaint support the application of this exception.  (Reply at 2–3 n.1.)  As aforementioned, the Court does not find that the economic loss rule applies to the claims in this case.  Nonetheless, under the special relationship analysis, the Court will consider whether a duty exists to sustain Plaintiffs' negligence claim where only economic loss is alleged.  *See S. California Gas Leak Cases*, 18 Cal. App. 5th 581, 588 (2017), *aff'd,* 7 Cal. 5th 391 (2019) ("Where the alleged negligence has caused economic loss, but no personal injury or property damage, duty is not presumed."); *see also Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F.

---

[2] California recognizes exceptions to this privity requirement for implied warranty claims.  First, in express warranty cases where "the plaintiff relies on the written labels or advertisements of a manufacturer," no privity is required.  *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695–96 (1954); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018).  Second, courts have held that plaintiffs do not need to show privity to bring implied warranty claims where they are third party beneficiaries of a contract.  *See, e.g., In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019); *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008).  However, Defendants do not argue that the facts in the Complaint support the application of either exception here.

App'x 603, 607 (9th Cir. 2008) (finding that district court must engage in special relationship analysis regardless of whether the economic loss rule applies to the claims).

The "special relationship" analysis applies to determine whether a party can recover for economic loss caused by negligence. *See Kalitta*, 315 F. App'x at 607. The California Supreme Court's decision in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979) is "[t]he principal case allowing recovery for economic losses where the parties were not in privity." *Dep't of Water & Power of City of Los Angeles v. ABB Power T & D Co.*, 902 F. Supp. 1178, 1187 (C.D. Cal. 1995). *J'Aire* states that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity." 24 Cal. 3d at 804. The principles in *J'Aire* have been applied in cases raising claims for defective goods or products where, as here, the plaintiff did not contract with the defendant. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1053 (N.D. Cal. 2004) (citing cases where California courts declined to distinguish between contracts for goods and contracts for services in applying *J'Aire*); *see also Centinela Freeman Emergency Med. Assocs. v. Health Net of California, Inc.*, 1 Cal. 5th 994, 1013 (2016) ("Privity of contract is no longer necessary to recognition of a duty in the business context and public policy may dictate the existence of a duty to third parties.") (quotations omitted).

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors[.]" *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958); *see also J'Aire*, 24 Cal. 3d at 804. These factors include: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct;

and (6) the policy of preventing future harm.  *J'Aire*, 24 Cal. 3d at 804 (citing *Biakanja*, 49 Cal. 2d at 650).[3]

Regarding the first factor, the Complaint does not plausibly claim that Navistar's decision to enter this contract was intended to directly affect Plaintiffs in particular, as opposed to all trucking companies.  *See Shapiro v. AT&T Mobility, LLC*, No. 2:19-CV-8972-CBM-FFM, 2020 WL 4341778, at *3 (C.D. Cal. May 18, 2020) (finding the first factor implausibly alleged where the complaint did not claim that a mobile phone contract affected plaintiff in a way distinct from all other customers); *cf. J'Aire*, 24 Cal. 3d at 804 (finding transaction directly affected appellant where the contract "was for the renovation of the premises in which appellant maintained its business" and "could not have been performed without impinging on that business").  The effect of the alleged defect appears to be merely incidental to Plaintiffs, which is not enough to establish that the "end and aim" of the transaction between Navistar and Sutton Leasing was intended to directly affect Plaintiffs.  *See Andrews*, 2017 WL 10543401, at *9 (citations and quotations omitted).

However, under the second factor, it was foreseeable that any defect in the design and/or manufacture of these vehicles that impede their operation would cause economic harm to companies that sought to use them to transport goods.  *See id.* at *10 (holding second factor suggested a special relationship where "Defendants knew or should have known that the Oil Industry Plaintiffs relied on their pipeline, and knew or should have known the consequences the pipeline's shutdown would have on them.").

---

[3] Some courts have held that an unfavorable finding on the first factor alone is sufficient to foreclose the application of the special relationship exception.  *See Morgan v. Apple Inc.*, No. 17-CV-05277-RS, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) ("Courts routinely reject negligence theories proceeding on the special relationship doctrine in situations such as this where a plaintiff fails to allege . . . that the manufacturer marketed a product with a specific plaintiff in mind rather than the general public."); *see also NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1030 (E.D. Cal. 2013) ("The first factor alone may be dispositive: to satisfy it, a party must demonstrate the relevant transaction affect[ed] the plaintiff in particular as opposed to similarly situated purchasers.") (citing *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1456 (1995)).  However, the Ninth Circuit in *Kalitta* specifically noted that the district court erred by failing to "fully consider[] all six factors."  315 F. App'x at 606.  Thus, the Court will proceed to analyze all six factors, "but special attention will be paid to the first factor." *Andrews v. Plains All Am. Pipeline, L.P.*, No. CV 15-4113 PSG (JEMx), 2017 WL 10543401, at *9 (C.D. Cal. Aug. 25, 2017).

Further, the third factor weighs in favor of a special relationship because the Complaint enumerates in detail the economic injury that Plaintiffs suffered because they were unable to operate the trucks due to the alleged defect. (Compl. ¶ 85.)  *See J'Aire*, 24 Cal. 3d at 806 (finding third factor satisfied where appellant alleged that it suffered a loss of business due to delayed construction); *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997) (quoting *J'Aire*, 24 Cal. 3d at 806) ("Recovery for injury to one's economic interests, where it is the foreseeable result of another's want of ordinary care, should not be foreclosed simply because it is the only injury that occurs.").

Fourth, the Complaint clearly alleges that Defendants' alleged negligence in equipping the MaxxForce Engines with defective EGR-only system directly caused the breakdowns that led to Plaintiffs' economic losses, establishing the necessary close connection.  The Court also finds Defendants' conduct particularly blameworthy for purposes of the fifth factor because the Complaint states they were aware of the defect and its consequences (*see* Compl. ¶¶ 63–64) and thus knowingly endangered drivers who were required to deal with the breakdowns while on the road.  Lastly, public policy also supports a finding of a duty of care here to deter vehicle manufacturers from intentionally incorporating deficient technology into engines that jeopardize the commercial enterprise of others in the supply chain, especially when they cannot avail themselves of remedies under contract or warranty law.

Thus, the only factor not met in the *Biakanja* analysis is the first factor.  Although this factor is afforded particular weight, the Court concludes that on balance, Plaintiffs have sufficiently pled that a special relationship existed to establish a duty owed by Defendants to Plaintiffs.  *See Andrews*, 2017 WL 10543401, at *10 (finding that although the allegations did not satisfy the first factor, "[g]iven the disposition of the other five factors, the Court is not prepared at this time to conclude, as a matter of law, that a special relationship permitting recovery for economic losses" did not exist); *Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 WL 5340490, at *3 (N.D. Cal. Sept. 24, 2013)

(concluding that plaintiffs sufficiently pled the existence of a duty under the *J'Aire* factors where the second, third, fourth, fifth, and sixth factors were met).

Accordingly, the Court finds that the Plaintiffs have established a duty under the special relationship analysis to sustain their negligence claim for economic losses.

## B. Puffery

As part of their negligent misrepresentation, fraud in the inducement, and UCL claims, Plaintiffs claim that Navistar made false misrepresentations as to the quality of the EGR-only engines on which Plaintiffs reasonably relied, to their detriment, when they entered into contracts to lease the Subject Vehicles from Sutton Leasing. (*See* Compl. ¶¶ 92–94, 109–115, 124–25.) Defendants allege these statements are puffery and therefore cannot form the basis of fraud claims as a matter of law. (Mem. of P. & A. at 3–6.)

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)); *see also In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) ("Puffing has been described as making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely."). In contrast, actionable representations of fact must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). "[T]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.* ("*Cook*"), 911 F.2d 242 (9th Cir. 1990)); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are actionable.") (internal citations and

quotations omitted).  Courts can determine whether alleged misrepresentations constitute puffery on Rule 12(b)(6) motions to dismiss.  *See Cook*, 911 F.2d at 245.

Although the Complaint identifies several alleged misrepresentations, Plaintiffs in their Opposition refute Defendants' puffery argument as to only the following statements:

- "Navistar made numerous, repeated false public statements that its engines would meet the 2010 EPA Standards" (Compl. ¶ 55);

- Navistar stated "the EGR Only System was a 'proven technology' that would provide a 'no-hassle emissions solution'" (*id.*);

- The "[d]ual-path EGR cooling provides optimized cooled EGR . . . [that] allows long-term system performance" (*id.* ¶ 69).

Because Plaintiffs do not proffer any counterarguments as to why the other statements in the Complaint are not puffery, the Court understands Plaintiffs to waive their claims to the extent they rely on these misrepresentations.  *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Personal Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009)); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Therefore, the Court will only address whether the above three statements are actionable in its analysis.[4]

### 1.   EPA Statement

The Court finds that the alleged public statement that MaxxForce engines in the Subject Vehicles would meet the 2010 EPA Standards goes beyond mere puffery because it makes a specific assertion about the engines that is measurable against a national

---

[4] Defendants also contend that statements about future operating costs are not actionable because they are "predictions of future events," not "statements pertaining to past or present facts."  (Mem. of P. & A. at 6.)  However, because Plaintiffs do not address those statements in their Opposition, the Court does not address this argument for the same reasons stated above.

standard. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *26 (N.D. Cal. Aug. 30, 2017) (holding statement that defendants had "safeguards that comply with federal regulations to protect personal information" was not puffery because it makes a "specific, non-subjective guarantee" about privacy); *Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015 WL 7888906, at *7 (N.D. Cal. Nov. 30, 2015) (finding a statement that a product "meets accepted industry standards" has "the 'measurable' quality that nudges [it] over the line from mere puffery to actionable misrepresentation"). Thus, Defendants' alleged misrepresentation regarding the ability of the MaxxForce engines to meet EPA standards is actionable.

### 2. "Proven Technology" Statement

The Court does not find Defendants' alleged statement that the EGR-only system was a "'proven technology" is actionable. The Complaint states only that Defendants described EGR as "proven technology," without any specifics as to how, when, where, or by whom the technology was proven. This is the type of imprecise assertion that "can neither be demonstrably true nor false." *See It's Just Lunch Int'l LLC v. Nichols*, No. EDCV 06-1127 VAP (OPx), 2009 WL 10668457, at *7 (C.D. Cal. May 21, 2009); *cf. Anunziato*, 402 F. Supp. 2d at 1140 (finding representation that technology was subject to "the most stringent quality control tests" was a specific factual assertion that amounted to more than mere puffery).

Furthermore, the phrase "proven technology" cannot be "reasonably interpreted as a statement of objective fact." *See Coastal Abstract Serv.*, 173 F.3d at 731. Plaintiffs' argument that the word "proven" implies Navistar had tested the EGR-only engines is insufficient, without any additional specific or measurable facts, to impute any objectivity onto a wholly subjective phrase. *See, e.g., Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS (BLM), 2018 WL 9539773, at *3 (S.D. Cal. July 6, 2018) (finding that a reference to product testing does not "transform a subjective statement into an objective statement" without specific and measurable facts about the product on which a reasonable consumer would rely). This statement, which Plaintiffs contend only *implies* product

testing, is even further removed from this example.  Thus, the Court finds this assertion is non-actionable puffery on which no reasonable consumer could rely.

### 3.    Statements About Technical EGR Functions

The Court next considers Defendants' alleged statement that "[d]ual-path EGR cooling provides optimized cooled EGR . . . [that] allows long-term system performance." (Compl. ¶ 69.)  The parties dispute whether this statement is a "technical" reference that is capable of verification in discovery.  (*See* Opp'n at 10; Reply at 8.)

This statement is closer to an assertion of fact than puffery.  The statement expressly supports the notion that the EGR technology provides a specific, measurable outcome— "optimized cooled EGR"—that ensures above-average engine performance.  *See Zearfoss v. Rubbermaid, Inc.*, No. 2:18-CV-06392-AB (ASx), 2019 WL 2902495, at *5 (C.D. Cal. Apr. 18, 2019) (finding claim that a product regulates the flow of air to "create the optimal environment" for produce freshness is not puffery because it "alludes to the employment of a scientific method").  Further, this representation about the quality of EGR technology is particularly significant here, where Plaintiffs' claims are specifically based on the EGR technology's inadequate cooling capabilities.  *See Grossman v. Schell & Kampeter, Inc.*, No. 2:18-CV-02344-JAM-AC, 2019 WL 1298997, at *4 (E.D. Cal. Mar. 21, 2019) (finding statements conveying dog food as "nutritious and safe"—including assertion that it helps support "optimal cellular health"—went beyond mere puffery, particularly where plaintiffs alleged the food posed health risk).  Thus, the Court finds that this more specific and technical description of the product's attributes is a more concrete representation on which a reasonable consumer could rely and does not constitute puffery.

Thus, the Court finds that Plaintiffs can sustain their fraud claims on the alleged EPA statement and Navistar's purported assertion about "optimized" EGR.  To the extent any fraud claims are based on any other alleged misrepresentations, they are dismissed with leave to amend.

### C.   Sufficiency of Fraud Claims Under Rule 9(b)

Alternatively, Defendants argue that even if the alleged misrepresentations are not puffery, Plaintiffs have not satisfied the heightened pleading standard under Rule 9(b) for fraud-based claims.  (Mem. of P. & A. at 2.)

As stated above, to allege a fraud claim based on  affirmative misrepresentations, a plaintiff must allege "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106; *see also Swartz*, 476 F.3d at 764 (claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations").  Here, Defendants argue that none of the fraud claims state with particularity these details.  (Mem. of P. & A. at 14.) Specifically, they contend that Plaintiffs' claims based on alleged omissions fail because Plaintiffs have not identified the necessary legal duty owed by Defendants to Plaintiffs to maintain these claims.  (*Id.* at 11–13.)

#### 1.   Affirmative Misrepresentations

Concerning Plaintiffs' claims based on affirmative misrepresentations, which includes their fraud in the inducement claim (Compl. ¶ 109) and part of their negligent misrepresentation claim (*id.* ¶¶ 92–93), Defendants argue that Plaintiffs have inadequately pled the content of some misrepresentations, the identity of the persons who heard or saw the representations, and where and when these representations were allegedly encountered. (Mem. of P. & A. at 14.)  Further, they contend that Plaintiffs have failed to state with particularity which documents contained the misrepresentations.  (*Id.*)

Some allegations state only that false representations were made on the Navistar website, without specifying the content or location of the statements.  (*See* Compl. ¶ 68.) The Court finds these cannot sustain claims for fraud.  Without particularities, such as the content of the misrepresentations and where it exists on Navistar's website, Plaintiffs have not provided sufficient detail to put Defendants on notice of particular misconduct such that they can raise a defense to it.  *See Vess*, 317 F.3d at 1106; *see also Smith v. Ygrene Energy Fund, Inc.*, No. 17-CV-01258-LB, 2017 WL 3168519, at *5 (N.D. Cal. July 26,

2017) (finding plaintiffs' claim that misrepresentations were made on defendants' "website" and in an unidentified "promotional video" fell short of 9(b)'s pleading requirements).

However, specific quotes cited in the Complaint are alleged to appear in Navistar's "Maintenance Information Guide" (Compl. ¶ 69) and are therefore sufficient to state fraud claims.   Plaintiffs identify both the specific document wherein these alleged misrepresentations appear and state with particularity their contents. *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012) (finding allegations sufficient where plaintiff "identified specific statements" in a video on its website); *Nutrition Distribution, LLC v. New Health Ventures, LLC*, No. 16-CV-2338-BTM-MDD, 2018 WL 1524488, at *3 (S.D. Cal. Mar. 27, 2018) (holding that allegations stating the substance of the alleged false and misleading statements on defendant's website and "other online media and marketplaces" were sufficient to give defendant fair notice of false advertisement).   Moreover, Plaintiffs allege that they "viewed Navistar's material misrepresentations prior to the lease of their MaxxForce Engine Vehicle"—and were thus exposed to them before they entered into the transaction—resulting in their reasonable reliance on the statements.  (Compl ¶¶ 70, 110–14. 125.)  *Cf. Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of fraud claims where plaintiff did not specify when he was exposed to the false statements). Thus, Plaintiffs have clearly alleged that they encountered the representations in the Maintenance Information Guide before leasing the Subject Vehicles.

The last set of alleged misrepresentations cite to specific quotations from unspecified "marketing materials."  (Compl. ¶ 67.)  They do not specify which of these "marketing materials" they were aware of and relied on when leasing the vehicles.  Plaintiffs' failure to identify which specific materials they relied on is fatal to their claim.  *See In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 877 (N.D. Cal. 2019) (finding plaintiffs failed to adequately plead fraud claims even where the complaint quoted specifically from "press releases, brochures, and advertisements" because plaintiffs did not

state "which of these specific materials, if any, they actually saw and relied upon in deciding to purchase their vehicles"). In fact, Plaintiffs do not state with particularity the circumstances surrounding their reliance on these materials; they do not allege if and when they received them or how they relied on them. *See Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 782–83 (9th Cir. 2018) (affirming dismissal where plaintiff failed to plead that it received and was aware of "the specific marketing materials and representations cited" in the complaint).

For these reasons, the Court finds that only Plaintiffs' allegations regarding the "Maintenance Information Guide" identify with the requisite particularity the allegedly fraudulent material such that Defendants can adequately respond. The remaining claims regarding unspecified statements on Navistar's website and particular assertions in "marketing materials" do not provide the requisite detail to satisfy Rule 9(b)'s heightened pleading standard and are therefore dismissed with leave to amend.

### 2. Fraudulent Omissions

Plaintiffs' remaining fraud claims concern Navistar's alleged nondisclosure of information regarding the defective condition in the Subject Vehicles' MaxxForce engines. This omission forms part of Plaintiffs' negligent misrepresentation claim (Compl. ¶¶ 90–91) and the crux of Plaintiffs' fraudulent concealment claim (*id.* ¶¶ 96–107). Defendants challenge the viability of this claim because, they argue, Plaintiffs have failed to state that Defendants had a duty to disclose the information. (Mem. of P. & A. at 11–13.)

The duty to disclose is an essential element of a fraud claims based on concealment. *See Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157–58 (2004).[5] To state a duty to disclose, a plaintiff must demonstrate that the defendant (1) is or was in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively concealed a material fact from the plaintiff; or (4) made partial

---

[5] There are four other elements necessary to state a claim for fraudulent concealment. *See id.* Because Defendants do not predicate their dismissal arguments on deficiencies in any of these elements, the Court does not address them here.

representations but also suppressed some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).[6]

Plaintiffs allege that Defendants owed them a duty to disclose based on exclusive knowledge. (Opp'n at 12–13.) A defendant has exclusive knowledge giving rise to a duty to disclose when, "according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given the nature of the defect, it was difficult to discover." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011). "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only . . . limited publicly available information about the defect." *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-08629 FMO, 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016).

Plaintiffs have adequately alleged a duty to disclose based on exclusive knowledge. The Complaint includes detailed allegations about Navistar's knowledge of the defect before Plaintiffs leased the Subject Vehicles. (Compl. ¶¶ 57–65.) This information is based on other legal action related to engine defects in vehicles manufactured by Navistar. In particular, the Complaint incorporates allegations from a pleading in a 2013 securities case that purport to show that Navistar was well-aware of problems with EGR-only engine performance and employees' warnings about the defect. (*Id.* ¶ 64(a)–(h).) The employees are identified as "confidential witnesses" who allege Navistar management had access to information about the precise defect that underlies this action. (*Id.*) Further, Plaintiffs allege that Navistar knew about the defect "before the first Truck equipped with a MaxxForce Engine was ever sold." (*Id.* ¶ 65.)

From these allegations, the Court can reasonably infer that Defendants had exclusive knowledge about the EGR-only engines that was unavailable to the public, and that

---

[6] Defendants argue that Plaintiffs rely on both exclusive knowledge and active concealment to establish a duty to disclose, and that they have failed to demonstrate either. Because the Court finds Plaintiffs have properly pled a duty based on exclusive knowledge of a material fact, the Court does not address the alternative theory that Defendants actively concealed a material fact.
*See Philo v. Liminova, Inc.*, No. 13-CV-00113-AJB WVG, 2013 WL 1628153, at *3 n.2 (S.D. Cal. Apr. 15, 2013) (finding four circumstances to state duty to disclose to be disjunctive).

consumers such as Plaintiffs "only became aware of the problem if they actually experienced it first-hand." *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007) (finding GM had exclusive knowledge of speedometer problem from "pre-release testing data" and "record of complaints"); *see also Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352, at *9 (C.D. Cal. Apr. 30, 2019) (allegations that defendant knew about defect from pre-production testing, design failure mode analysis, and customer complaints).  Plaintiffs are not imputing exclusive knowledge on Defendants only by virtue of their involvement in the design of the engine; rather, the Complaint incorporates specific allegations about Navistar's intentional decision to suppress information about the defect and prevent the development of alternative technologies despite repeatedly being informed of engine failures and the limitations of using EGR-only technology.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1012 (N.D. Cal. 2018) (holding that it was reasonable to infer exclusive knowledge where "the thrust of the complaint is that there was purposeful manipulation of the system by the various defendants involved in the design and manufacturing process to achieve the deceptive result (i.e., ability to pass the emissions tests but no proper emissions control under normal driving conditions)").

The Court therefore finds these claims sufficient to satisfy Rule 9(b) and denies Defendants' Motion to Dismiss the fraudulent concealment and negligent misrepresentation claims based on omissions.

### D.    UCL Claim

Defendants claim that Plaintiffs cannot show Defendants are in possession of their money or property to recover restitution under the UCL.  (Mem. of P. & A. at 15–17.)  Plaintiffs agree that they are not entitled to restitution.  (Opp'n at 14.)  However, they assert that they have alleged the necessary ongoing injury to state a claim for injunctive relief under the UCL because they are "still suffering ongoing harm based on Defendants' past conduct."  (*Id.* at 14–15.)  In reply, Defendants allege that this insufficiently states injury

for purposes of injunctive relief because Plaintiffs have not alleged that they are subject to a real and immediate threat of future injury remediable by an injunction.  (Reply at 9.)

Plaintiffs can state a claim for injunctive relief on the basis that they are experiencing ongoing harm.  *See Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 1017 (citing *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010)).[7]  However, the Complaint does not contain sufficient factual matter to state a claim for injunctive relief on this basis.  In their Complaint, Plaintiffs allege that the "Subject Vehicles required multiple engine repairs" and ultimately all Subject Vehicles "failed as a result of the Defect and are being warehoused."  (Compl. ¶ 84.)  Plaintiffs also enumerate numerous costs and other losses incurred as a result of the defective Subject Vehicles.  (*Id.* ¶ 85.)  However, while these statements allege injuries stemming from Defendants' past alleged conduct, it does not state that Plaintiffs are *continuing* to experience harm.  *See Mayfield*, 599 F.3d at 970 ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.").  Plaintiffs' argument that their injury is ongoing because the Subject Vehicles have not yet been repaired is not supported by facts present in their Complaint.  (Opp'n at 15.)

The Complaint therefore provides insufficient factual matter from which the Court can infer Plaintiffs are suffering ongoing injuries entitling them to injunctive relief.  *See Pestmaster Franchise Network, Inc. v. Duncan*, No. EDCV 08-505 VAP (JCRx), 2008 WL 11336179, at *6 (C.D. Cal. July 8, 2008); *cf., U.S. v. Sequel Contractors Inc.*, 402 F. Supp. 2d 1142, 1156–57 (C.D. Cal. 2005) (dismissing a UCL claim because the plaintiff "does not allege any facts that support a finding that [the plaintiff] has an ownership interest in property or funds in [the defendant's] possession").  Accordingly, the Court grants Defendants' Motion and dismisses Plaintiffs' UCL claim, with leave to amend, for failing to adequately allege injury that satisfies the standing requirement for injunctive relief.

---

[7] A plaintiff seeking injunctive relief under the UCL must satisfy the standing requirements of both the UCL and Article III.  *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (quotations and citation omitted).

### E.    Attorneys' Fees

Lastly, Defendants request dismissal of Plaintiffs' request for attorneys' fees because Plaintiffs have not cited to any legal authority for an attorneys' fees award.  (Mem. of P. & A. at 2.)  Plaintiffs oppose on the basis that they may seek fees as a private attorney general under California Code of Civil Procedure § 1021.5.

"California follows the "American rule," under which each party to a lawsuit must pay its own attorney fees unless a contract or statute or other law authorizes a fee award." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 237 (2012). Plaintiffs request attorneys' fees as a part of their UCL claim.  (Compl ¶ 132.)  While the UCL generally limits remedies to injunctive relief and restitution, a prevailing plaintiff can seek attorneys' fees as a private attorney general pursuant to § 1021.5 in certain circumstances.  *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 600 (2009). Under this section, attorneys' fees can be awarded to a prevailing party in an action under California state law when "the litigation enforced an important right affecting the public interest, . . . a significant benefit was conferred on a large class of persons, and . . . the necessity and financial burden are such that an award of attorney's fees is appropriate." *In re County of Monterey Initiative Matter*, Case Nos. C 06-01730 JW, C 06-02369 JW, 2007 WL 3342796, *3 (N.D. Cal. Nov. 9, 2007) (citing *Keith v. Volpe*, 858 F.2d 467, 486 (9th Cir. 1988)).

Defendants do not address in their Reply whether Plaintiffs are entitled to attorneys' fees under this provision.  In any event, "[t]he section 1021.5 analysis is a factor-based inquiry usually conducted later in litigation." *Open Text, Inc. v. Northwell Health, Inc.*, No. 2:19-CV-09216-SB-AS, 2020 WL 8025315, at *6 (C.D. Cal. Dec. 11, 2020); *M Resorts, Ltd. v. New England Life Ins. Co.*, No. 19-CV-1545-WQH-AGH, 2019 WL 6840396, at *6 (S.D. Cal. Dec. 16, 2019) ("Determining whether awarding attorneys' fees under § 1021.5 is appropriate requires a factor based analysis that seems impossible to properly undertake at the pleading stage.").  As such, the Court denies Defendants' motion to dismiss Plaintiffs' request for attorneys' fees as premature.

**IV.    CONCLUSION AND ORDER**

For the reasons stated above, the Court:

- **DENIES** Defendants' Motion to Dismiss Plaintiffs' claims on the basis of the economic loss rule;

- **GRANTS IN PART** Defendants' Motion to Dismiss Plaintiffs' claims based on affirmative representations (the fraud in the inducement claim and part of the negligent misrepresentation claim based on affirmative representations) as nonactionable puffery and for failing to state a claim under Rule 9(b);

- **DENIES** Defendants' Motion to Dismiss Plaintiffs' claims based on fraudulent omissions (the fraudulent concealment claim and part of the negligent misrepresentation claim based on omissions) for failing to state a claim under Rule 9(b);

- **GRANTS** Defendants' Motion to Dismiss Plaintiffs' UCL claim for failing to satisfy the standing requirement for injunctive relief;

- **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim for attorneys' fees as premature.

If Plaintiffs elect to amend their deficient claims, they must do so by filing an amended complaint by **June 15, 2021**.  If Plaintiffs do not file an amended complaint or request an extension to do so by this deadline, Defendants are required to file an answer by **June 29, 2021**.

**IT IS SO ORDERED.**

DATED: June 1, 2021

Hon. Cynthia Bashant
United States District Judge

20cv1304